**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Plaintiffs/Counter Defendants, <br><br> v. <br><br> 21ST CENTURY ONCOLOGY INVESTMENTS, LLC, 21ST CENTURY ONCOLOGY SERVICES, LLC, 21ST CENTURY ONCOLOGY HOLDINGS, INC., 21ST CENTURY ONCOLOGY MANAGEMENT SERVICES, INC., 21ST CENTURY ONCOLOGY, INC., 21ST CENTURY ONCOLOGY, LLC, 21ST CENTURY ONCOLOGY OF CALIFORNIA, A MEDICAL CORPORATION, ROBERT RUSSELL, VALERIE CORBEL, ROXANNE HAATVEDT, VENETA DELUCCHI, CARL SCHMITT, MATTHEW BENZION, KATHLEEN LABARGE, STACEY SCHWARTZ, TIMOTHY MEULENBERG, STEPHEN WILBUR, JUDY CABRERA, JACKIE GRIFFITH, SHARON MACDERMID, and STEVEN BREHIO, <br><br> Defendants/Counter Plaintiffs. | Case No: 8:17-cv-582-MSS-AEP |

**REPLY IN SUPPORT OF DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW**

Defendants/Counter Plaintiffs 21st Century[1] and Data Breach Plaintiffs[2] (collectively, "Defendants"), hereby reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, Dkt. No. 143 ("Opposition"). Travelers[3] fails to meaningfully address Defendants' well-reasoned and well-supported arguments that, under the plain and unambiguous language of the Insurance Policies[4] and controlling Florida law, Travelers owes a duty to defend and provide coverage to 21st Century for the Data Breach MDL. Instead, Travelers attempts to muddy the waters with arguments that are either unavailing or miss the mark completely. For the reasons detailed below, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment, Dkt. No. 138 ("Motion" or "MSJ") in its entirety.

## I. INTRODUCTION

Under the Insuring Agreements of the Policies,[5] Travelers has a duty to defend and provide coverage for lawsuits against 21st Century that seek damages because of "personal injury" "caused by an offense arising out of [21st Century's] business," if "the offense was

---

[1] "21st Century" refers collectively to 21st Century Oncology Investments, LLC, 21st Century Oncology Services, LLC, 21st Century Oncology Holdings, Inc., 21st Century Oncology Management Services, Inc., 21st Century Oncology, Inc., 21st Century Oncology, LLC, and 21st Century Oncology of California, a Medical Corporation.

[2] "Data Breach Plaintiffs" refers collectively to Robert Russell, Valerie Corbel, Roxanne Haatvedt, Veneta Delucchi, Carl Schmitt, Matthew Benzion, Kathleen LaBarge, Stacey Schwartz, Timothy Meulenberg, Stephen Wilbur, Judy Cabrera, Jackie Griffith, Sharon MacDermid, and Steven Brehio, plaintiffs in the multidistrict litigation *In Re: 21st Century Oncology Customer Data Security Breach Litigation*, Case No. 8:16-md-2737-MSS-AEP (M.D. Fla.), MDL No. 2737 ("Data Breach MDL").

[3] "Travelers" refers collectively to Plaintiffs/Counter Defendants Charter Oak Fire Insurance Company ("Charter Oak") and Travelers Property Casualty Company of America, wholly owned subsidiaries of The Travelers Companies, Inc. Cert. of Interested Persons and Corp. Disclosure Statement 2, Dkt. No. 62.

[4] "Policies" or "Insurance Policies" refers collectively to Charter Oak Policy No. P-660-515D1067-COF-15, a Commercial General Liability ("CGL") policy, with effective dates of January 31, 2015 through January 31, 2016, Dkt. No. 128-2, and Travelers Policy No. PSM-CUP-515D1067-TIL-15, a Commercial Excess Liability (Umbrella) policy, with effective dates of January 31, 2015 through January 31, 2016, Dkt. No. 128-4.

[5] The pertinent excerpts of the Insuring Agreements are set forth in Sections II.A-B of Defendants' Motion.

committed in the "coverage territory" during the policy period."[6] "Personal injury" under the Policies includes injuries caused by the offense of "oral or written publication, including publication by electronic means, of material that: . . . discloses information about a person's private life."[7] The claims asserted against 21st Century in the Data Breach MDL clearly fall within the Insuring Agreements of the Policies; therefore, Travelers must defend and provide coverage to 21st Century. MSJ 13-20.

The *only* argument Travelers makes to counter a finding of coverage under the Policies is that the term "publication" should be construed as "publication [by 21st Century]." Despite its repeated assertions that the "Policies are clear and unambiguous," Opp. 12, Travelers does not even attempt to identify the language in the Policies that purportedly supports this assertion. Travelers cannot do so, because the plain language of the Policies contradicts Travelers' argument that "publication" should be construed as "publication [by 21st Century]"—the Policies simply do not contain any language that supports this argument. MSJ 20-30. Moreover, Travelers' argument is contradicted by the Florida Supreme Court's construction of the term "publication" in *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000 (Fla. 2010). MSJ 16-18.

## II.     ARGUMENT

### A.     The Data Breach Complaint Clearly Alleges Publication of PII/PHI.

As set forth in Defendants' Motion, the Data Breach Plaintiffs seek damages resulting from the publication of their personally identifiable information ("PII") and protected health

---

[6] Fourth Amended Complaint for Declaratory Judgment ("FAC"), Ex. B (Charter Oak Policy), Dkt. No. 128-2, at 28, 35-36, 38, 53-54; FAC, Ex. D (Travelers Policy), Dkt. No. 128-4, at 6-7, 16-17, 31-32.

[7] FAC, Ex. B, Dkt. No. 128-2, at 53-54; FAC, Ex. D, Dkt. No. 128-4, at 31-32.

information ("PHI"). *See* MSJ 6-8, 18-20. Among other things, the Data Breach Complaint[8] alleges, citing to a declaration by FBI Special Agent Joseph Battaglia, that the Data Breach Plaintiffs' PII/PHI has been "publicly offered for sale to identity thieves on the internet," and a sample of this PII/PHI was transmitted to an FBI informant. MSJ 8; DBC ¶¶ 114-19, 196.

Travelers ignores this clear allegation of "publication" of PII/PHI, and instead attempts to muddy the waters by analogizing to cases in which there was a data breach ***with no evidence of publication of the compromised PII/PHI***. Thus, Travelers asserts that Defendants "attempt[] to characterize a third-party data breach as a publication by the insured." Opp. 6. Not so. The Data Breach Complaint sets forth numerous, detailed factual allegations that the Data Breach Plaintiffs' PII/PHI was published—both by 21st Century as well as by unauthorized parties. *See* MSJ 6-8, 18-20. Travelers does not dispute—or even reference—the Data Breach Complaint's allegations of publication by unauthorized parties, such as that the Data Breach Plaintiffs' PII/PHI was "publicly offered for sale to identity thieves on the internet," and therefore tacitly concedes that these allegations constitute "publication" within the meaning of Florida law. *See* DBC ¶ 196. Likewise, Travelers ignores and tacitly concedes the Data Breach Complaint's numerous allegations of direct and indirect publication of PII/PHI by 21st Century. *See* MSJ 20-21; DBC ¶¶ 7, 14, 130, 152.[9]

In fact, the only challenge Travelers makes to the Data Breach Plaintiffs' allegations of

---

[8] "Data Breach Complaint" or "DBC" refers to the Data Breach Plaintiffs' Amended Consolidated Class Action Complaint, Data Breach MDL Dkt. No. 191.

[9] In this regard, Travelers' argument that the Data Breach Complaint makes "conclusory allegations" of publication is unavailing, *cf.* Opp. 5, and should be rejected for the reasons set forth in Defendants' Opposition to Travelers' Dispositive Motion for Summary Judgment and Memorandum of Law in Support, Dkt. No. 141 at 10-11 ("Defendants' Opposition"). As Travelers acknowledges, "[i]t is the facts pleaded in the complaint against an insured, . . . that determine the duty to defend"—and Travelers cannot evade its duty to defend and provide coverage simply by pretending that these factual allegations do not exist. *Cf.* Opp. 5.

publication is that "there are no factual allegations" connecting 21st Century's disclosure of PII/PHI *to third party vendors* "with the harms allegedly suffered." Opp. 4, 7. To the contrary, the Data Breach Complaint alleges a clear connection between 21st Century's disclosure of PII/PHI to vendors and the harms suffered by the Data Breach Plaintiffs:

> Both the compromised [REDACTED] database and the compromised [REDACTED] Server were housed in [REDACTED] by a third-party business associate, [REDACTED]. 21CO has not produced a Business Associate Agreement with [REDACTED] in effect at the time of the data breach and, on information and belief, 21CO did not have a Business Associate Agreement with [REDACTED] at the time of the data breach. Thus, on information and belief, 21CO negligently released, disclosed, and published its patients PII/PHI to [REDACTED] "without obtaining satisfactory assurances in the form of a written business associate agreement."[10]

DBC ¶ 123. Thus, ***the database and server that were compromised in the Data Breach[11] were housed by a third-party vendor, to which 21st Century "negligently released, disclosed, and published its patients PII/PHI."***

While Travelers argues that any such disclosures do not constitute "publication" within the meaning of *Penzer*, 29 So. 3d 1000,[12] because the third party vendors are only "a small number of [21st Century] business associates," Opp. 6-7, Florida law is clear that "'a defendant may become liable'" for the offense of public disclosure of private facts "'through revealing [a] matter to only one person, from whom the information predictably goes to many.'" *Smith v. Volusia Cty., Fla.,* 2011 WL 1598741, at *2, 6 (M.D. Fla. Apr. 28, 2011) (claim for invasion of privacy upheld, where private facts were disclosed to several members of an organization and subsequently "became widely known to most or all of the employees" of that organization)

---

[10] This paragraph has been redacted in accordance with the Protective Order between the parties in the Data Breach MDL. *See* Data Breach MDL Dkt. Nos. 88, 90.

[11] "Data Breach" has the same meaning set forth in Defendants' MSJ.

[12] Notably, this is the only section of the Opposition in which Travelers refers to *Penzer*.

4

(quoting *Williams v. City of Minneola,* 575 So. 2d 683, 689 (Fla. Dist. Ct. App. 1991)). Here, as in *Smith*, 21st Century is liable for negligently disclosing its patients' PII/PHI to third party vendors, as a result of which that PII/PHI was publicly disclosed.

Travelers' final argument regarding 21st Century's disclosures to third party vendors—that "the Data Breach Complaint fails to identify when an alleged 'publication' to third party vendors occurred"—is unavailing. *Cf.* Opp. 8. The Data Breach Complaint, fairly read, alleges facts that create a ***potential*** for coverage under the Policies, and therefore Travelers owes 21st Century a duty to defend.[13] Furthermore, disclosure to third party vendors is but one of numerous allegations of "publication" in the Data Breach Complaint. Based on the totality of the allegations in the Data Breach Complaint, Travelers has a duty to defend and provide coverage for 21st Century in the Data Breach MDL.

**B.    Travelers Does Not Dispute That It Could Have Easily Limited Coverage to "Publication" Committed by the Insured, but Failed to Do So.**

Under Florida law, if an insurer intends to restrict coverage, it should use language clearly stating its purpose, and when an insurer "could have easily written the policy to include" language that would have narrowed coverage, but failed to do so, the policy will be construed against the insurer. *Markel Am. Ins. Co. v. CSI Structured Consulting Corp.,* 2012 WL 1029482, at *8 (S.D. Fla. Mar. 26, 2012). As the court explained in *Adolfo House,* 165 F. Supp.

---

[13] *See Jones v. Fla. Ins. Guar. Ass'n, Inc.,* 908 So. 2d 435, 442-43 (Fla. 2005); *see also Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1342 (S.D. Fla. 2001) (duty to defend when the complaint alleged some "advertising injury" during the policy period, but did not specify dates of all alleged injuries); *IDC Const., LLC. v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1350-51 (S.D. Fla. 2004) (duty to defend where complaint did not specify the date damages first occurred, but "allege[d] facts partially within and partially outside the coverage of the policy"); *Trizec Properties, Inc. v. Biltmore Const. Co.*, 767 F.2d 810, 813 (11th Cir. 1985) (duty to defend where "the actual date that the damage occurred [wa]s not expressly alleged," but the complaint's allegations were "broad enough" that there was "a potential for coverage").

2d 1332, 1340, "[i]f Travelers wanted to limit its exposure for 'misappropriation' to suits arising under the common law tort of misappropriation, it was incumbent upon it to do so unambiguously" and "[h]aving failed to do so, it cannot now ask the court to re-write the policy for it under the guise of policy construction."

Here, Travelers offers no meaningful response to the fact that it could have easily included language in the Policies that would have restricted coverage to "publication [by 21st Century]" as it asserts, but failed to do so. *See* MSJ 23-26; *cf.* Opp. 8-10. In fact, Travelers acknowledges that it ***did*** expressly restrict coverage to acts "committed by an insured" or by "a sub-set of insureds" in other portions of the "personal injury" coverage of the Policies, but failed to do so with respect to the offense of "publication" at issue here. Opp. 8-10.[14] Travelers asserts, without citing any legal authority, that "a restrictive provision in one coverage clause does not signal that other coverage is more or less expansive," but this mischaracterizes Defendants' argument and is inconsistent with Florida law. *Cf.* Opp. 9.

In Florida, insurance contracts are construed "as a whole," viewing all words in context, so as "to give each provision its full meaning and operative effect." *Anderson v. Auto-Owners Ins. Co.,* 172 F.3d 767, 769 (11th Cir. 1999). Thus, the fact that Travelers expressly restricted coverage to acts "committed by an insured" in other portions of the Personal Injury coverage of the Policies, but did ***not*** include language in the Policies expressly restricting coverage to "publication [committed by an insured]," must be given meaning. *See* MSJ 23-25; *Auto-*

---

[14] For example, the Policies' "Personal and Advertising Injury" exclusions apply to injuries "caused ***by or at the direction of the insured***"; "done ***by or at the direction of the insured***"; "committed ***by or at the direction of the insured***"; and "committed ***by an insured***." FAC, Ex. B, Dkt. No. 128-2, at 28-29 (Exclusions 2. A., 2. B., 2.d., and 2.j.) FAC, Ex. D, Dkt. No. 128-4, at 9 (Exclusions h(1), h(2), h(4), and h(6)). As detailed in Defendants' Motion, there is no such limiting or restricting language in the Insuring Agreements or the definition of "personal injury" regarding the "offense" of "publication." *See* MSJ 23-25.

*Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000). Here, the only reasonable meaning is that the Policies do ***not*** restrict coverage to "publication [committed by an insured]" as Travelers asserts. Instead, "publication" should be given its plain language meaning, in accordance with the Florida Supreme Court's construction of this term in *Penzer*, pursuant to which "publication" can be made by ***anyone***—anyone can "publish", "place before the public", or "disseminate" materials. See MSJ 16-18, 22; *Penzer*, 29 So. 3d at 1005-06.

Travelers' argument for a restrictive interpretation is directly contrary to Florida law: "when an insurer fails to define a term in a policy . . . the insurer cannot take the position that there should be a 'narrow, restrictive interpretation of the coverage provided.'" *See State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So. 2d 1072, 1076 (Fla. 1998) (citation omitted). Similarly, "[i]f an insurer intends to restrict coverage, it should use language clearly stating its purpose." *Davis v. Nationwide Life Ins. Co.*, 450 So. 2d 549, 550 (Fla. Dist. Ct. App. 1984); *Adolfo House Distributing Corp.,* 165 F. Supp. 2d at 1340. Finally, insurance policies are to be interpreted liberally in favor of coverage, so as "to achieve the maximum coverage coherent with the plain meaning of the words used." *Lenhart v. Federated Nat. Ins. Co.,* 950 So. 2d 454, 457-58 (Fla. Dist. Ct. App. 2007).

Here, the Policies do not define the term "publication," and Travelers may not "take the position that there should be a narrow, restrictive interpretation of the coverage provided." *See State Farm,* 720 So. 2d at 1076 (internal quotation marks and citation omitted). In this regard, Travelers' attempt to add restrictive terms to the Policies should not be countenanced, nor is there any reasonable basis for interpreting the Policies in this manner. *See White v. Cont'l Cas. Co.,* 2008 WL 2073905, at *6 (M.D. Fla. May 14, 2008) (citing *Taurus Holdings, Inc. v.*

7

*United States Fidelity & Guar. Co.,* 913 So. 2d 528, 532 (Fla. 2005) (courts may not "rewrite contracts" or "add meaning that is not present")).

**C.  Travelers Does Not Dispute That It Could Have Included Endorsements Limiting Coverage, but Failed to Do So.**

Travelers offers no meaningful response to Defendants' argument that Travelers could have included endorsements that would have restricted coverage, but failed to do so. MSJ 8-11. Instead, Travelers asserts that "Defendants impermissibly ask the Court to consider other policy forms that are not part of the Subject Policies, seemingly as evidence that the Subject Policies are ambiguous." *Cf.* Opp. 10-12. This argument is irrelevant and completely misses the mark. Defendants do not argue that the Policies are ambiguous—to the contrary, Defendants argue that, under the clear and unambiguous terms of the Policies, Travelers has a duty to defend and provide coverage to 21st Century. MSJ 13-16.[15]

In contrast to Travelers' assertion, Defendants argue that the endorsements that Travelers failed to include in the Policies demonstrate that:

- At the time the Policies were issued, Travelers was aware that a data breach could trigger coverage under the Policies; and

- Travelers had drafted endorsements that would have excluded such coverage, which had been approved by the Florida Office of Insurance Regulation, but Travelers chose not to include these endorsements in the Policies.

MSJ 8-11. For these reasons, Travelers' reliance on *Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg*, 734 F. Supp. 2d 1304, 1317 (S.D. Fla. 2010) and related cases is wholly

---

[15] Defendants argue *in the alternative* that, "even if 'publication' could plausibly be read as 'publication [by 21st Century]' as Travelers argues, at best this would make the term 'publication' ambiguous. . . . Under Florida law, '[a]mbiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.' Therefore, even if the term 'publication' is ambiguous, it must, as a matter of law, be interpreted liberally in favor of 21st Century." MSJ 26 (citations omitted). Thus, even if "publication" were ambiguous—which it is not—the Policies should still be construed in favor of coverage.

misplaced. *Cf.* Opp. 12. In those cases, the insureds sought to introduce other insurers' policy forms in an effort to create an ambiguity where no ambiguity existed. Here, Defendants do not rely on other insurers' policy forms to argue that the terms of the Policies are ambiguous, but rather argue that Travelers' failure to include ***its own*** endorsements establishes that Travelers "could have easily written the policy to include" language that would have "narrow[ed] the coverage" of the Policies, but failed to do so. *See Markel,* 2012 WL 1029482, at *8. Therefore, Travelers' "narrow, restrictive interpretation of the coverage provided" should be rejected. *See State Farm,* 720 So. 2d at 1076.

**D.     Travelers Fails to Address Clear Statements of Law by Multiple Circuit Courts.**

Travelers' assertion—that the insured must have affirmatively engaged in the claimed offense in order to trigger coverage and a duty to defend under personal injury coverage—has been rejected by every Circuit Court that has considered it. *See* MSJ 26-28. Travelers fails to meaningfully address or distinguish clear statements of law by multiple Circuit Courts of Appeal,[16] and its attempts to do so ultimately support Defendants' argument.

With regard to *Smith & Nephew Inc. v. Fed. Ins. Co.*, 113 Fed. App'x 99 (6th Cir. 2004), Travelers concedes that the insured did not commit the offenses at issue, but argues that the allegations suggested ***purposeful conduct*** by the insured, because "the insured was alleged to have been engaged in a conspiracy to defame the claimant." Opp. 13. Travelers does not cite to any language in the opinion to support its assertion, because there is none—and, in fact, the

---

[16] Similarly, Travelers fails to acknowledge or address the authoritative insurance treatise cited by Defendants, which specifically states with respect to personal injury coverage that "***the covered offense need not be committed by the insured***. It is enough that the insured is being sued because of those offenses.'" *See* MSJ 27 (quoting Allan D. Windt, Insurance Claims and Disputes § 11.28 (6th ed. 2013)). Windt's *Insurance Claims and Disputes* has been cited approvingly by the Eleventh Circuit and almost all Circuit Courts of Appeals. *See, e.g.*, *Garcia v. GEICO Gen. Ins. Co.*, 807 F.3d 1228, 1233 (11th Cir. 2015).

9

opinion makes clear that the Court squarely rejected Travelers' argument:

> [The insurer] notes that the allegations only allege that the other defendants committed the offenses of defamation and malicious prosecution, and that the policy does not cover the acts of [the insured's] co-defendants. This argument misses the mark. The relevant insuring language provides, "[w]e will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law . . . because of . . . personal injury . . . caused by an offense." This language indicates, therefore, that ***what matters for purposes of determining coverage is the asserted liability of the insured, not whether it committed the wrongful acts.*** If [the insured] engaged in a conspiracy to defame and maliciously prosecute Reid, then the policy would apply to cover it because [the insured] would be legally obligated to pay damages to Reid, even though it did not commit any of the overt acts in furtherance of the conspiracy, since a conspirator is held liable for the acts of its co-conspirators.

*Smith & Nephew*, 113 Fed. App'x at 102-03. Thus, whether the insured engaged in "purposeful conduct" had nothing to do with the Sixth Circuit's reasoning; instead, it determined coverage based on "the asserted liability of the insured"—whether the insured could be "legally obligated to pay damages" with respect to the given offense. *Id.*

Likewise, with respect to *Valley Improvement Association, Inc. v. United States Fidelity and Guaranty Corporation,* 129 F.3d 1108 (10th Cir. 1997), Travelers concedes that that the insured did not commit the offense at issue, but attempts to distinguish the case on the basis that the insured was alleged to have engaged in "***affirmative conduct*** that contributed to the alleged offense." Opp. 14. Again, Travelers does not cite to any language in the opinion to support its assertion, because the Court squarely rejected the argument:

> [The insurer] argues that the policy language requires the offense of trespass or wrongful entry to have been committed by VIA itself. The policy does not unambiguously say so, however. Instead, ***the policy covers damages which the insured shall become obligated to pay*** because of injury "arising out of one or more of the following offenses committed in the conduct of [VIA's] business . . . ." New Mexico follows the rule that any ambiguities in the language of an insurance policy are to be construed against the insurer, and a clause is ambiguous if it is "reasonably and fairly susceptible of different constructions." We conclude that ***the language involved here is fairly susceptible of the construction that coverage would exist in circumstances***

10

> ***in which the insured was only indirectly responsible for the trespass***.

*Valley Improvement*, 129 F.3d at 1117 (citations omitted). Again, whether the insured engaged in "affirmative conduct" had nothing to do with the Tenth Circuit's reasoning; instead, it determined coverage based on the policy language--whether the insured could "become obligated to pay" damages with respect to the given offense. *Id.*

Finally, with respect to *American Guarantee and Liability Insurance Company v. 1906 Company,* 273 F.3d 605 (5th Cir. 2001), Travelers concedes that the insured did not commit the offense at issue, but again attempts to distinguish this opinion on the basis of the insured's "***active involvement*** in the wrongdoer's conduct." Again, Travelers does not cite to any language in the opinion, because the opinion squarely contradicts that argument:

> Under Coverage B, [the insurer] agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies." "Personal injury" is defined by the policy as "injury, other than 'bodily injury', arising out of one or more of the following offenses . . . ." Thus, ***the threshold question is whether, based on the state court allegations, Hattiesburg Coke and Richard Thomson can be held liable under Mississippi law to pay damages for non-bodily personal injury to the state court plaintiffs***. We conclude that they can.

*American Guarantee*, 273 F.3d at 612. Specifically, the Fifth Circuit reasoned that, "[b]ased on the allegations of the state court complainants, the insureds are potentially liable under three theories of negligence," including the failure to maintain reasonably safe premises, negligent hiring, and negligent entrustment. *Id.* at 613-14. Whether the offense arose from the insured's "active involvement" was irrelevant to the Fifth Circuit's reasoning; instead, it determined coverage based on the insuring agreement—whether the insured could "become[] legally obligated to pay" damages for the alleged offense. *Id.* at 612. [17]

---

[17] In contrast to Travelers' assertion that the Fifth Circuit "does not appear to have examined . . . in any depth"

Thus, all of the Circuit Courts that have considered arguments analogous to Travelers' assertion that the offense of "publication" should be construed as "publication [by 21st Century]" have soundly rejected such arguments—not because the offense arose from the insured's "purposeful conduct," "affirmative conduct," or "active involvement," as Travelers wrongfully asserts, but because the insuring agreement provided coverage when the insured could be held liable to the claimants for damages. So too here. As detailed in Defendants' Motion, the Insuring Agreements of the Policies' "personal injury" coverage provide coverage for the Data Breach MDL, because the Data Breach Plaintiffs allege that 21st Century is liable for damages caused by the offense of publication arising out of 21st Century's business as to their claims for negligence, gross negligence, negligent misrepresentation, breach of express and implied contracts, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and invasion of privacy. MSJ 13-16.

Moreover, Travelers' position actually supports Defendants' argument. First, Travelers concedes (as it must) that each of these Circuit Court opinions held that ***there was coverage for the insured for offenses committed by uninsured third parties for which the insured was potentially liable***—which directly supports Defendants' argument. Second, Travelers' assertion that these opinions are distinguishable because they involved "purposeful conduct," "affirmative conduct," or "active involvement" of the insured ***directly contradicts Travelers' argument that the offense at issue must be affirmatively committed by the insured***. Travelers thus effectively concedes that the insured need not affirmatively commit the offense at issue

---

the question of "whether an insured may be liable for offenses committed by a third party," Opp. 14, *American Guarantee* provides a detailed analysis of this issue. *See, e.g.*, 273 F.3d at 612-16.

to trigger coverage—arguing now that the offense must arise from the insured's "purposeful conduct," "affirmative conduct," or "active involvement." As with Travelers' argument that "publication" should be construed as "publication [by 21st Century]," this argument is contrary to the plain language of the Policies and Florida law. Even if it countenanced, Travelers would still owe a duty to defend and provide coverage, because the Data Breach Complaint alleges purposeful conduct, affirmative conduct, and active involvement by 21st Century.[18]

### E. Travelers Fails to Demonstrate That *Zurich*, *Innovak*, or *Rosen Millennium* Are Applicable to the Facts at Issue Here.

As explained in Defendants' Opposition, the trial court opinions cited by Travelers are inapposite, because ***none of these decisions involve allegations of "publication" within the meaning of Florida law***. *See* Defs.' Opp. 16-24. In *Zurich American Insurance v. Sony Corporation of America,* 2014 WL 8382554 (N.Y. Sup. Ct. Feb. 21, 2014), there were no allegations that the information allegedly disclosed in the data breach was viewed by anyone other than the perpetrators of the data breach. Defs.' Opp. 18. Similarly, in *Innovak International, Inc. v. Hanover Insurance Co.,* 280 F. Supp. 3d 1340 (M.D. Fla., Nov. 17, 2017) (decided under South Carolina law), this Court stated that "[n]owhere in the Underlying Complaint do the Underlying Claimants contend that their [personal private information] was 'published,' whether by third party hackers or by Innovak." 280 F. Supp. 3d at 1347; *see also*

---

[18] *See, e.g.*, DBC ¶ 9 ("21st Century's conduct [was] a direct cause of the impermissible release, disclosure, and publication of Class members' PII/PHI."); ¶ 14 (21st Century "released, disclosed, and published Plaintiffs' and Class members' PII/PHI," and "rendered Plaintiffs' and Class members' PII/PHI publicly accessible."); ¶ 129 ("21st Century 'disclosed protected health information to [] third party vendors, acting as its business associates, without obtaining satisfactory assurances in the form of a written business associate agreement.'"); ¶ 152 ("21st Century's lack of reasonable care or concern in addressing . . . known vulnerabilities resulted in Plaintiffs' and Class members' PII/PHI being made publicly accessible to unauthorized parties through the internet, with no security, safeguards, or other protection.").

Defs.' Opp. 20-21. Likewise, in *St. Paul Fire & Marine Ins. Co. v. Rosen Millennium, Inc.,* 337 F. Supp. 3d 1176 (M.D. Fla. 2018), *appeal docketed,* No. 18-14427 (11th Cir. Oct. 19, 2018), the claim was "devoid of any substantive information," and there were "no facts to support RHR's conclusion that [the insured] made known RHR's customers' private information to third parties.'" 337 F. Supp. 3d at 1182-83; *see also* Defs.' Opp. 22.

Here, the Data Breach Plaintiffs expressly allege that their PII/PHI was published as a result of the Data Breach—including that their PII/PHI was "publicly offered for sale to identity thieves on the internet," as evidenced by FBI Special Agent Battaglia's declaration. MSJ 6-8, 18-20; DBC ¶¶ 114-19, 196. In light of this evidence—which Travelers completely ignores in its Opposition—Travelers' attempt to analogize the Data Breach MDL to cases in which there were no credible allegations of publication is spurious at best. *See* Opp. 1, 5-6.

To the extent that *Zurich*, *Innovak*, or *Rosen Millennium* considered whether "publication" should be construed as "publication [by the insured]," any such statements are *dicta*.[19] Given that neither *Zurich*, *Innovak*, nor *Rosen Millennium* involved **any** allegations of "publication" within the meaning of Florida law, statements regarding whether "publication" should be construed as "publication [by the insured]" involved a hypothetical issue not before the courts, and as such are *dicta*. Travelers makes this clear in its Opposition, reasoning that, although this Court in *Innovak* found that "[n]owhere in the Underlying Complaint do the Underlying Claimants contend that their PII was 'published,'" nevertheless the Court "analyze[d] coverage ***on the assumption that a publication had been alleged***." Opp. 15

---

[19] The Eleventh Circuit has defined *dicta* as "statements that go beyond the facts of the case," which are "not necessary to deciding the case." *United States v. Pickett*, 916 F.3d 960, 966 (11th Cir. 2019) (internal quotation marks and citations omitted). For this reason, "*dicta* is not binding on anyone for any purpose." *Id.*

14

(quoting *Innovak*, 280 F. Supp. 3d at 1347). Thus, any such analysis "'addresses a hypothetical case that was not before the court,'" and is therefore *dicta* which "should be given little persuasive value." *See Snider v. Cingular Wireless Health & Welfare Benefits Plan for Non-Bargained Employees*, 2005 WL 8159687, at *4 (M.D. Fla. July 26, 2005) (quoting *United States v. Matthews*, 411 F.3d 1210, 1226-27 (11th Cir. 2005)).

As Travelers acknowledges, *Rosen Millennium* is the only one of these cases decided under Florida law. Opp. 15-16. Further, *Rosen Millennium* is a trial court opinion, and as such is not binding precedent. *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991). Moreover, as detailed in Defendants' Opposition, *Rosen Millennium* did not construe the term "publication" in accordance with its plain meaning pursuant to *Penzer*. *See* Defs.' Opp. 22-23. In this regard, *Rosen Millennium* was wrongly decided.[20]

### III.    CONCLUSION

For the reasons set forth herein and in Defendants Motion, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment in its entirety.

Dated: July 29, 2019              By: */s/ Cari Campen Laufenberg*
                                                         Cari Campen Laufenberg
                                                         **KELLER ROHRBACK L.L.P.**
                                                         1201 Third Avenue, Suite 3200
                                                         Seattle, WA 98101
                                                         Telephone: (206) 623-1900
                                                         Facsimile: (206) 623-3384
                                                         claufenberg@kellerrohrback.com

---

[20] *Rosen Millennium* is on appeal, No. 18-14427 (11th Cir. Oct. 19, 2018). If the Eleventh Circuit reaches the issue of whether "publication" should be construed as "publication [by the insured]," Defendants believe it will reverse *Rosen Millennium* in accordance with the Circuit Court opinions discussed above in Section II.D.

15

Daniel S. Robinson
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292
drobinson@robinsonfirm.com

Jodi Westbrook Flowers
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
jflowers@motleyrice.com

Robert C. Gilbert
Florida Bar No. 561861
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG**
**GILBERT**
2800 Ponce de Leon Blvd., Suite 1100
Coral Gables, FL 33134
Telephone: (305) 529-8858
Facsimile: (954) 525-4300
gilbert@kolawyers.com

Kent G. Whittemore
Florida Bar No. 166049
**THE WHITTEMORE LAW**
**GROUP, P.A.**
100 Second Avenue South, Ste. 304-S
St. Petersburg, FL 33701
Telephone: (727) 821-8752
kwhittemore@wherejusticematters.com

*Counsel for Defendants/Counter Plaintiffs*

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

By: */s/ Cari Campen Laufenberg*
Cari Campen Laufenberg